IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mary L. Johnson, ) | C/A No. 0:15-4249-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Mary L. Johnson, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

PJG

> (1)   whether the claimant is engaged in substantial gainful activity;
>
> (2)   whether the claimant has a "severe" impairment;
>
> (3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;
>
> (4)   whether the claimant can perform her past relevant work; and
>
> (5)   whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In August 2012, Johnson applied for DIB, and in September 2013 applied for SSI. In both applications, Johnson alleged disability beginning July 6, 2012. Johnson's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on April 1, 2014 at which Johnson, who was represented by Kevin Klein, Esquire, appeared and testified. During the hearing, Johnson amended her disability onset date to May 1, 2013. (Tr. 79.) After hearing testimony from a vocational expert, the ALJ issued a decision on June 16, 2014 concluding that Johnson was not disabled from May 1, 2013 through the date of the decision. (Tr. 12-25.)

Johnson was born in 1960 and was fifty-three years old at the time of her amended alleged disability onset date. (Tr. 23.) She has a high school education and has past relevant work experience as a newspaper carrier, a phlebotomist, and a receptionist. (Tr. 203.) Johnson alleged disability due to back pain, neck pain, borderline diabetes, high cholesterol, bilateral carpal tunnel syndrome. (Tr. 201.)

In applying the five-step sequential process, the ALJ found that Johnson had not engaged in substantial gainful activity since May 1, 2013—her amended alleged onset date. The ALJ also determined that Johnson's spine disorders, fibromyalgia, torn meniscus (left knee), impingement syndrome of the left shoulder, carpal tunnel syndrome, depression, and neck pain were severe impairments. However, the ALJ found that Johnson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found that Johnson retained the residual functional capacity to



> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks. However, the claimant is limited to occasional climbing of ladders, ropes, scaffolds, ramps or stairs, frequent balancing, occasional stooping, frequent crouching, occasional kneeling or crawling and no left overhead reaching. She is limited to work with one or two step tasks.

(Tr. 16.) The ALJ found that Johnson was unable to perform past relevant work but that, considering Johnson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Johnson could perform. Therefore, the ALJ found that Johnson was not disabled from May 1, 2013 through the date of his decision.

The Appeals Council denied Johnson's request for review on July 25, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Johnson raises the following issues for this judicial review:

Issue 1     Improper hypothetical to the VE. In order to rely on the testimony of a vocational expert, the ALJ must present a hypothetical which precisely sets forth all of [Johnson]'s impairments. The ALJ failed to include [Johnson]'s moderate limitation in concentration, persistence, or pace, therefore proposing an incomplete hypothetical. Can an ALJ decision based on an incomplete hypothetical be considered a decision based upon substantial evidence?

Issue 2     Failure to seek treatment. Social Security regulations do not allow the ALJ to discount disability because of a failure to obtain treatment without further investigation. Here, the ALJ made an assumption about Johnson's failure to pursue treatment without the requisite investigation.

Issue 3     Opinion evidence. The opinion of [] Dr. Divina, Johnson's treating specialist, contains work-preclusive limitations which the ALJ improperly rejected. Where the ALJ improperly ignores the opinion evidence, can his decision be supported by substantial evidence?

(Pl.'s Br., ECF No. 11.)

## DISCUSSION

In Johnson's Reply Brief, she states that she withdraws Issue 2. Therefore, the court limits its analysis to her first and third issues on appeal.

**A.     Hypothetical Question**

Johnson, relying on the recent decision by the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), argues that the ALJ erred by finding "moderate limitations" with regard to Johnson's concentration, persistence, or pace at Step Three of the sequential evaluation process, but failed to account for these limitations in the hypothetical



question presented to the vocational expert. In <u>Mascio</u>, the Fourth Circuit held that remand was warranted, in part, because the ALJ's hypothetical question to the vocational expert was legally insufficient in that it failed to include—without any explanation by the ALJ—the ALJ's finding of moderate limitation on the claimant's ability to maintain concentration, persistence, or pace at Step Three. <u>Mascio</u>, 780 F.3d at 638. The Fourth Circuit stated that it "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' " <u>Id.</u> (quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). However, the Court continued:

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

<u>Mascio</u>, 780 F.3d at 638 (citation omitted).

Contrary to Johnson's arguments, her case is not directly on point with <u>Mascio</u>. In this case, in finding that Johnson had moderate limitations in concentration, persistence, or pace at Step Three, the ALJ observed that Johnson "testified that she had some memory problems. The claimant drives, which requires sustained focus and the ability to follow directions." (Tr. 16.) However, unlike in <u>Mascio</u>, the ALJ in Johnson's case provided a discussion of her limitations stemming from her mental impairments in performing the residual functional capacity assessment. (<u>See</u> Tr. 21-23.) For example, the ALJ found

> [a]s to the claimant's depression, while this is documented in the record, the claimant has not sought mental health treatment, she has not required any inpatient psychiatric

Page 6 of 13



> hospitalizations for stabilization of symptoms and she has not experienced any episodes of decompensation. Additionally, the claimant reported in March 2014 that her depression symptoms had really only been for the past couple of weeks (Exhibit 20F, p. 4). Moreover, a mental status examination revealed she was alert and cooperative, her speech was normal, and her thoughts were logical and coherent (Exhibit 10F, p. 6). These objective examinations are consistent with the claimant's ability to perform unskilled work.

(Tr. 21.) The ALJ also found Johnson's daily activities were consistent with the ability to perform unskilled, light work and that Johnson overstated the impact of her medically determinable impairments. The ALJ stated that "[e]ssentially, the claimant possesses the ability to perform the physical and mental activities necessary to perform the above residual functional capacity." (Id.) The ALJ also observed that Johnson "testified that she was performing job searches on the computer in an effort to gain unemployment benefits while at the same time maintaining that she was disabled." (Id.) The ALJ observed that although the state agency reviewers found that Johnson had no mental limitations, the ALJ found greater mental limitations were warranted based on subsequent medical evidence documenting Johnson's depression; however, the ALJ also found that the record did not support limitations beyond those included in the residual functional capacity.[2] (Tr. 22-23.) Thus, unlike in Mascio, the court finds that the ALJ sufficiently addressed any limitations in Johnson's concentration, persistence, or pace in assessing her residual functional capacity and presenting the hypothetical question to the vocational expert.

**B.     Treating Physician**

Johnson also argues that the ALJ failed to properly evaluate the opinion from her treating physician, Dr. Darius Divina. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a

---

[2] In this case, the ALJ limited Johnson to "work with one or two step tasks." (Tr. 16.)

Page 7 of 13



detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

With regard to Dr. Divina's opinion, the ALJ observed the following:

> On March 18, 2014, Dar[iu]s A. Divina, D.O. opined that the claimant could lift up to ten pounds occasionally, she could sit for up to eight hours and stand for four hours in an eight-hour workday, she could never reach overhead with her left upper extremity, she could never climb, kneel or crouch and she would miss more than three days of work per month (Exhibit 18F). I afford this opinion little weight as it is inconsistent with the objective and diagnostic test findings, revealing that the claimant had intact motor and sensory, a normal gait, negative straight leg raising and intact cerebellar function (Exhibits 19F, 20F). There is no support for the opinion that the claimant would miss more than three days of work per month, rather it is a bare conclusion offering with no support or rationale. Finally, this opinion is inconsistent with the claimant's daily activities which include her ability to care for herself, drive, perform light housework, and go shopping in stores independently.

(Tr. 22.)

Johnson challenges the ALJ's evaluation of this opinion evidence. First, Johnson argues that the ALJ's statement about inconsistencies is conclusory and insufficient to satisfy the ALJ's duty to provide specific reasons for the weight given to a treating physician's opinion. Johnson points to objective evidence that she contends supports Dr. Divina's opinion and renders the ALJ's decision unsupported by substantial evidence. Johnson also argues that the ALJ's rejection of Dr. Divina's opinion that Johnson would miss more than three days of work per month was a medical judgment that Dr. Divina, and not the ALJ, was qualified to make. Finally, Johnson argues that the daily activities listed by the ALJ do not provide support for discounting Dr. Divina's opinion. She also appears to argue that the ALJ failed to mention the qualifications Johnson offered in describing her ability to perform these activities.

The court has carefully considered Johnson's arguments; however, the court finds that the ALJ gave appropriate reasons to discount Dr. Divina's opinion, and Johnson is essentially asking



the court to reweigh the evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). The court observes that the ALJ's decision reflects that the ALJ applied the relevant factors to the opinion at issue. Further, contrary to Johnson's arguments, the ALJ's decision reflects that he properly considered the record as a whole and applied the relevant factors to Dr. Divina's opinion. In fact, in summarizing all of the evidence presented in the record, the ALJ specifically addresses the records that Johnson argues supports Dr. Divina's opinion, which include the clinical findings and diagnostic test results indicated in the treatment notes from Johnson's initial visit with Dr. Divina on December 4, 2013 and her follow up visit on December 19, 2013. After summarizing all of the evidence, the ALJ's decision reflects that he found the

> objective examinations . . . revealed that the claimant had some reduced range of motion in her neck and back at times and tenderness consistent with fibromyalgia; however, most recently, in March 2014, a physical examination revealed the claimant was in mild discomfort but no acute distress, she had some tenderness in her neck and back but she had a normal gait, she was negative for straight leg raising, her motor and sensory were intact and her cerebellar function was intact (Exhibit 20F, p. 8). These objective and diagnostic test findings are not consistent with the alleged incapacitating impairments but rather are consistent with the claimant's ability to perform light work with postural limitations and no overhead reaching with the left upper extremity.

(Tr. 20-21.) The ALJ also found that Johnson had received conservative treatment for her allegedly incapacitating pain, noting reports of significant improvement in her pain levels with medication; consistent notations of showing no acute distress or obvious discomfort; and that following her March 24, 2014 emergency room visit she was "treated and informed that she could return to work immediately without restriction." (Tr. 21.) Thus, Johnson has not directed the court to any evidence that the ALJ failed to address, and the records from December 2013 do not render the ALJ's

PJG

evaluation unsupported by substantial evidence in light of his opinion as a whole. Similarly, the court finds that Johnson has failed to demonstrate any legal error or support that would render the ALJ's determination that there was no support for Dr. Divina's opinion that Johnson would miss more than three days of work per month, especially in light of the ALJ's observation that Johnson was released to work in March 2014. Finally, the court finds that the ALJ properly considered Johnson's daily activities, finding that they were consistent with the ability to perform unskilled, light work.

In sum, upon review of the ALJ's decision and the record, the court finds that Johnson has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Divina's opinion is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). The decision reflects that the ALJ weighed this opinion and reasonably found that the medical findings and observations in the record did not support it. Although Johnson may be able to point to select medical records that arguably support Dr. Divina's opinion, she has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly relied on medical records and treatment notes in determining that the opinion was

unsupported. See Craig, 76 F.3d at 589; Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). For all of these reasons, the court finds that Johnson has not shown that the ALJ's decision with regard to the opinion evidence at issue was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## RECOMMENDATION

For the foregoing reasons, the court finds that Johnson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

September 13, 2016  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).